15-1164-cv
*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2015

(Argued: February 2, 2016     Decided:  April 13, 2016)

Docket No. 15-1164-cv

---

FLO & EDDIE, INC., a California Corporation,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellee*,

− v. −

SIRIUS XM RADIO, INC., a Delaware Corporation,

*Defendant-Appellant*,

DOES, 1 THROUGH 10,

*Defendants*.

---

Before: CALABRESI, CHIN, CARNEY, *Circuit Judges*.

Defendant-Appellant Sirius XM Radio, Inc. appeals from the November 14, 2014 and December 12, 2014 orders of the United States District Court for the Southern District of New York (McMahon, *J.*) denying its motions, respectively, for summary judgment and for reconsideration in connection with Plaintiff-Appellee Flo & Eddie, Inc.'s copyright infringement suit. A significant and unresolved issue of New York law is determinative of this appeal:  Is there a right of public performance for creators of sound recordings under New York law and, if so, what is the nature and scope of that right? Accordingly, we CERTIFY this question to the New York Court of Appeals and reserve decision.

---

HARVEY GELLER (HENRY GRADSTEIN, MARYANN R. MARZANO, *on the brief*), GRADSTEIN & MARZANO, P.C., Los Angeles, CA; (EVAN S.

COHEN, Esq., *on the brief*), Los Angeles, CA; *for Plaintiff-Appellee*

DANIEL M. PETROCELLI (CASSANDRA L. SETO, *on the brief*), O'MELVENY & MYERS LLP, Los Angeles, CA; (JONATHAN D. HACKER, *on the brief*), O'MELVENY & MYERS LLP, Washington, DC; *for Defendant-Appellant*

BRANDON BUTLER, AMERICAN UNIVERSITY WASHINGTON COLLEGE OF LAW, Washington, DC, *for Amici Curiae* Law Professors Gary Pulsinelli, Julie Ross, and Peter Jaszi, in support of *Defendant-Appellant*

EUGENE VOLOKH, UCLA SCHOOL OF LAW, Los Angeles, CA, *for Amici Curiae* Howard Abrams, Brandon Butler, Michael Carrier, Michael Carroll, Ralph Clifford, Brian Frye, William Gallagher, Eric Goldman, James Grimmelmann, Yvette Liebesman, Brian Love, Tyler Ochoa, David Olson, David Post, Michael Risch, Matthew Sag, Rebecca Tushnet, and David Welkowitz, in support of *Defendant-Appellant*

MITCHELL STOLTZ, VERA RANIERI, Electronic Frontier Foundation, San Francisco, CA, *for Amicus Curiae* Electronic Frontier Foundation, in support of *Defendant-Appellant*

R. BRUCE RICH, BENJAMIN E. MARKS, GREGORY SILBERT, TODD LARSON, KAMI LIZARRAGA, WEIL, GOTSHAL & MANGES LLP, New York, NY, *for Amicus Curiae* Pandora Media, Inc., in support of *Defendant-Appellant*

RAZA PANJWANI, JOHN BERGMAYER, Public Knowledge, Washington, DC, *for Amicus Curiae* Public Knowledge, in support of *Defendant-Appellant*

STEPHEN B. KINNAIRD, PAUL HASTINGS LLP, Washington, DC; RICK KAPLAN, National Association of Broadcasters, Washington, DC; *for Amicus Curiae* National Association of Broadcasters, in support of *Defendant-Appellant*

ADAM R. BIALEK, STEPHEN J. BARRETT, WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP,

2

New York, NY; DAVID L. DONOVAN, New York State Broadcasters Association, Inc.; *for Amicus Curiae* New York State Broadcasters Association, Inc., in support of *Defendant-Appellant*

---

CALABRESI, *Circuit Judge*:

This case presents a significant and unresolved issue of New York copyright law: Is there a right of public performance for creators of sound recordings under New York law and, if so, what is the nature and scope of that right? Because this question is important, its answer is unclear, and its resolution controls the present appeal, we reserve decision and certify this question to the New York Court of Appeals.

**BACKGROUND**

Plaintiff-Appellee Flo & Eddie, Inc. ("Appellee") is a California corporation that asserts that it owns the recordings of "The Turtles," a well-known rock band with a string of hits in the 1960s, most notably "Happy Together." Appellee, which is controlled by two of the band's founding members, acquired the rights to The Turtles' recordings in 1971 and continues to market the recordings in a variety of ways, including by licensing the rights to make and sell records and by licensing the use of the recordings in other media.

Defendant-Appellant Sirius XM Radio, Inc. ("Appellant") is a Delaware corporation that is the largest radio and internet-radio broadcaster in the United States, with a subscriber base of more than 25 million individuals. Appellant broadcasts music directly to its own subscribers as well as through third parties. These broadcasts include sound recordings created before February 15, 1972. *See* 17 U.S.C. § 301(c). Among them are recordings

3

allegedly belonging to Appellee. Appellant has not compensated Appellee for the use of these pre-1972 recordings, nor has Appellee granted Appellant a license to use them.

On September 3, 2013, Appellee brought suit against Appellant in the Southern District of New York on behalf of itself and a class of owners of pre-1972 recordings, asserting claims for common-law copyright infringement and unfair competition under New York law. In particular, Appellee alleged that Appellant infringed Appellee's copyright in The Turtles' recordings by broadcasting and making internal reproductions of the recordings (e.g., library, buffer and cache copes) to facilitate its broadcasts. Appellee simultaneously filed parallel class actions against Appellant in California on August 1, 2013, and in Florida on September 3, 2013, alleging state copyright claims based on California and Florida law, respectively. *See Flo & Eddie Inc. v. Sirius XM Radio Inc.*, No. CV 13-5693 PSG, 2014 WL 4725382 (C.D. Cal. Sept. 22, 2014); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-cv-23182, 2015 WL 3852692 (S.D. Fla. June 22, 2015), *appeal filed* (11th Cir. July 10, 2015).[1]

On May 30, 2014, Appellant moved for summary judgment on two grounds. First, Appellant contended that there is no public-performance right in pre-1972 recordings under

---

[1] The district court in the Florida case granted summary judgment in favor of Appellant on the theory that no such performance right existed under state law. *Flo & Eddie, Inc.*, 2015 WL 3852692, at *5. That case is now pending before the Eleventh Circuit. In the California case, the district court denied Appellant's motion for summary judgment, finding that such a right existed under a California statute. *Flo & Eddie*, 2014 WL 4725382, at *6. Appellant moved for interlocutory appeal, which the district court denied, and Appellee moved to certify a class of owners of pre-1972 recordings, which the district court allowed, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. CV 13-5693 PSG, 2015 WL 4776932, at *3, 17 (C.D. Cal. May 27, 2015); the district court, however, then stayed the case while Appellant pursued an interlocutory appeal of the court's class-certification ruling, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. CV 13-5693 PSG, 2015 WL 4397175, at *1 (C.D. Cal. June 8, 2015). A parallel case brought by Appellee against Pandora Media, Inc., an internet radio provider, is currently before the Ninth Circuit. *Flo & Eddie, Inc. v. Pandora Media, Inc. et al*, No. CV 14-07648 PSG (C.D. Cal. Feb. 23, 2015), *appeal filed* No. 15-55287 (9th Cir. Feb. 24, 2015).

New York copyright law, and that its internal reproductions of these recordings were permissible fair use. Second, Appellant argued that a state-law public performance right, if recognized, would be barred by the dormant Commerce Clause. On November 14, 2014, the District Court (McMahon, *J*.) denied this motion. *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 62 F. Supp. 3d 325, 330 (S.D.N.Y. 2014). On the first issue, the Court concluded that New York *does* afford a common-law right of public performance to copyright holders, and that Appellant's internal reproductions were correspondingly not fair use. *Id*. at 344-46. On the second issue, the Court found that the recognition of a performance right did not implicate the dormant Commerce Clause because such a right was not a "regulation" of commerce under *Sherlock v. Alling*, 93 U.S. (3 Otto) 99 (1876). *Id*. at 353.

Soon after, Appellant, with new counsel, filed a motion for reconsideration of the November 14, 2014 order and, in the alternative, requested that the District Court certify its summary-judgment order for interlocutory appeal. The District Court denied Appellant's motion for reconsideration, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-cv-5784, 2014 WL 7178134 (S.D.N.Y. Dec. 12, 2014), but certified its summary-judgment and reconsideration orders for interlocutory appeal, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-cv-5784, 2015 WL 585641 (S.D.N.Y. Feb. 10, 2015).

Appellant then petitioned us to permit the interlocutory appeal, which we did. *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 15-cv-497, 2015 WL 3478159 (2d Cir. May. 27, 2015).

## DISCUSSION

We review *de novo* the District Court's denial of Appellant's motion for summary judgment, construing the evidence in the light most favorable to Appellant and drawing all reasonable inferences in its favor. *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013). We review the District Court's denial of Appellant's motion for reconsideration *de novo* as well. *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 52 n.3 (2d Cir. 2012).

## A.

In 1971, Congress amended the Copyright Act to grant limited copyright protection to sound recordings fixed on or after February 15, 1972, while expressly preserving state-law property rights in sound recordings fixed before that date. *See* 17 U.S.C. § 301(c). Later, Congress created an exclusive performance right in post-1972 sound recordings performed by digital audio transmission. *See* 17 U.S.C. § 106(6). Performances of post-1972 sound recordings transmitted by other means, such as AM/FM radio, still do not enjoy federal copyright protection. Because Appellee's recordings were fixed before February 15, 1972, they are protected, if at all, by state copyright law. While New York provides no statutory protection to owners of pre-1972 sound recordings, New York common law does provide certain rights to copyright holders in these recordings. *See Capitol Records, Inc. v. Naxos of Am., Inc.*, 4 N.Y.3d 540, 563 (2005) (*Naxos II*). As a result, the issue before us is whether New York common law affords copyright holders the right to control the performance of sound recordings as part of their copyright ownership.

The New York Court of Appeals has not ruled on whether such a right exists. Appellee contends that New York common law affords it a right of public performance, which Appellant violated when it broadcast Appellee's recordings without a license. Appellant, conversely, argues that no such right exists. Siding with Appellee, the District Court concluded that "general principles of common law copyright dictate that public performance rights in pre-1972 sound recordings do exist." *Flo & Eddie*, 62 F. Supp. 3d at 344.[2]

With no clear guidance from the New York Court of Appeals, we are in doubt as to whether New York common law affords Appellee a right to prohibit Appellant from broadcasting the sound recordings in question.[3]  In such circumstances, we may certify the

---

[2] In so holding, the District Court noted the uncertain state of New York law and expressed its regret at not being permitted to certify the question to the New York courts. *Flo & Eddie*, 62 F. Supp. 3d at 342 n.4 ("I am not applying the law as I think it should be, but as I predict how the New York Court of Appeals would resolve the question. Unlike the Second Circuit, I do not have the option to certify even profoundly uncertain issues of state law to the Court of Appeals." (citation, internal quotation marks, and alteration omitted)). New York limits certification to "the Supreme Court of the United States, any United States Court of Appeals, or a court of last resort of any other state," N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a); some other states, such as Connecticut, permit district courts to certify, *see* Conn. Gen. Stat. § 51-199b.

[3] Appellant contends that our opinion in *RCA Mfg. Co. v. Whiteman*, 114 F.2d 86 (2d Cir. 1940) (L. Hand, *J.*), controls this appeal, but this argument is incorrect. As an initial matter, it does not seem that *Whiteman* actually held that no such rights existed. *Whiteman* did express doubt about the existence of a public-performance right. But its holding was that, even if there were such rights, they ceased to exist following the record's publication. *Id.* at 88 ("We do not, however, have [the] question [of the validity of public performance rights] to decide, for we think that the 'common-law property' in these performances ended with the sale of the records and that the restriction did not save it; and that if it did, the records themselves could not be clogged with a servitude."). And the New York Court of Appeals has characterized *Whiteman* in just such terms. *Naxos II*, 4 N.Y.3d at 554-55. Moreover, whatever the holding of *Whiteman*, it is only a federal court's construction of state law, which ceases to bind us upon any indication of adverse state authority, such as *Naxos II*. *Whiteman*, therefore, does not resolve the present case.

unresolved, determinative question to New York's highest court. *See* 2d Cir. Local R. 27.2;

*Schoenfeld v. New York*, 748 F.3d 464, 470 (2d Cir. 2014). In deciding whether to certify, we

consider three factors:

> (1) whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to predict how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified question is determinative of a claim before us.

*Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (quoting *Osterweil v.*

*Bartlett*, 706 F.3d 139, 142 (2d Cir. 2013)).

Certification is clearly appropriate in the case before us. First, the Court of Appeals

has not addressed whether copyright holders in sound recordings have a public-performance

right in their works, nor is there sufficient other guidance that allows us to predict how the

Court would resolve this issue. Second, Appellee's claims of infringement patently rise and

fall with the question's resolution.[4] And third, whether to recognize such a right of public

performance is essentially a "public policy choice[]" appropriately resolved by a New York

court. There are clear costs to recognizing a right of public performance in sound

recordings; as the District Court recognized, Appellee's suit "threatens to upset those settled

expectations" of radio broadcasters that have "adapted to an environment in which they do

not pay for broadcasting pre-1972 sound recordings." *Flo & Eddie*, 62 F. Supp. 3d at 352.

---

[4] The parties have argued at length about whether Appellant's creation of an internal database of pre-1972 recordings separately constitutes infringement of Appellee's copyright or whether, instead, such copying is fair use. The fair-use analysis applicable to this copying, however, is bound up with whether the ultimate use of the internal copies is permissible. As a result, the certified question is determinative of Appellee's copying claims as well. Similarly, Appellee's unfair-competition claim depends upon the resolution of the certified question.

8

Still, New York's interest in compensating copyright holders may perhaps outweigh the cost of making such a change. Whatever the merits of such a determination might be as a value judgment, however, it *is* a value judgment, which is for New York to make. And that fact counsels certification.

## B.

Both parties, however, argue that New York maintains a default rule as to the scope of property rights that settles this case. Appellee asserts that, in New York, property rights are all-encompassing unless specifically limited. Appellee bases this contention principally on tangible property cases. *See, e.g.*, *Victory v. Baker*, 67 N.Y. 366, 368 (1876) (stating that property ownership "carries with it to the owner the right to enjoy, use and manage it in any way he pleases, subject only to restrictions imposed by law or by the duty which he owes to third persons"). It then argues that such broad ownership applies as fully to intellectual property, and cites to *Naxos II*. *See Naxos II*, 4 N.Y.3d at 559 (noting that the New York "judiciary and . . . State Legislature intended to fill [the pre-publication gap in federal copyright law] by protecting the owners of sound recordings in the absence of congressional action").

Appellant, conversely, contends that property rights, far from being all-encompassing, are inherently limited. *Victory* itself recognizes that property "cannot be an absolute right . . . [as] it must be exercised in view of the legal rights of others in order to preserve the rights of all." 67 N.Y. at 368; *cf.* Lee Anne Fennell, *Fee Simple Obsolete* 6 (Univ. of Chi. Coase-Sandor Inst. for Law & Econ. Research Paper No. 739, 2016) (assessing alternatives to a fee-simple model of property ownership in view of urbanization).

Moreover, Appellant maintains, the Court of Appeals has frequently recognized limitations on common-law property rights even in the absence of legislative action, and it points us to, for example, *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y. 3d 43, 51-53 (2006) (holding that survivors' limited right to control the burial of a deceased relative did not imply a general, common-law property right in body parts). This, Appellant emphasizes, has been true of intangible rights as well. *See Palmer v. De Witt*, 47 N.Y. 532, 542 (1872) ("The right publicly to represent a dramatic composition for profit, and the right to print and publish the same composition to the exclusion of others, are entirely distinct, and the one may exist without the other.").

Were there a clear default rule—one way or the other—with respect to the scope of property rights under New York common law, the absence of explicit authority establishing a performance right might not matter, and we could decide this case ourselves. But, since New York has no such clear default rule, we are back to needing guidance from the New York courts.

**C.**

Appellant also argues that any law that would grant a public performance right to copyright holders would violate the dormant Commerce Clause. If this were so, then—despite our usual preference not to reach difficult constitutional issues, *see Adelson v. Harris*, 774 F.3d 803, 807-08 (2d Cir. 2014) (citing *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944))—the existence of such a right, *vel non*, would not be determinative of the case at hand until we decide the Commerce Clause question. For if we held that the dormant Commerce Clause banned all such rights, Appellee would lose regardless of New York law.

Under such circumstances, certification might not be appropriate in New York. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a) (certification available only where "determinative questions of New York law are involved").[5]

But, in fact, the question of whether such a right would violate the dormant Commerce Clause is not something we can adjudicate without knowing what, if any, limitations New York places on such rights, if they do exist. It is not the case that all rights of this sort violate the dormant Commerce Clause; some might, some might not. *See Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 96 (2d Cir. 2009) (noting that state policy tested under dormant Commerce Clause "must be judged by its overall economic impact on interstate commerce in relation to the putative local benefits conferred" (emphasis omitted)); *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986) (recognizing that "no clear line separat[es]" state regulation that is *per se* invalid and activity subject to *Pike* balancing, and stating that "the critical consideration is the overall effect of the statute on both local and interstate activity"). As a result, knowing what rights—if any—are provided under New York common law is determinative, and certification remains appropriate.[6]

---

[5] Some other states, such as Delaware, allow certification of relevant questions even if not determinative. *See, e.g.*, Del. Sup. Ct. R. 41(b). What *is* determinative is often not an easy question. *See Yesil v. Reno*, 705 N.E.2d 655, 656 (N.Y. 1998) (per curiam) (declining to answer certified questions due to "uncertainty whether the certified questions [were] determinative of the underlying matters"); *see also Retail Software Servs., Inc. v. Lashlee*, 525 N.E.2d 737, 738 (N.Y. 1988) (per curiam).

[6] The District Court held that the dormant Commerce Clause did not apply because a performance right would not constitute a "regulation" of interstate commerce under *Sherlock v. Alling*, 93 U.S. (3 Otto) 99 (1876). *Flo & Eddie*, 62 F. Supp. 3d at 353. For the reasons given in text, we cannot decide the dormant Commerce Clause question at this time.

**CONCLUSION**

Accordingly, we reserve decision and CERTIFY the following question to the New York Court of Appeals: Is there a right of public performance for creators of sound recordings under New York law and, if so, what is the nature and scope of that right? We do so, as always, with the clear understanding that, while we can ask New York's highest court to address this issue, that Court retains "the ultimate decision on whether to accept certification." *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 484 (2d Cir. 2004)(*Naxos I*). Moreover, should the Court of Appeals accept certification, we invite it to "reformulate or expand" this question as appropriate. *Adelson*, 774 F.3d at 811. And we "welcome its guidance on any other pertinent questions that it wishes to address." *Id*.

Accordingly, the Clerk of the Court is ORDERED to transmit to the New York Court of Appeals a Certificate together with this opinion and its identification of the question being certified as well as a complete set of the briefs, appendix, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case after a response from the New York Court of Appeals, upon receipt of that Court's opinion, or without such opinion should that Court decline certification.[7]

---

[7] Costs shall abide the final disposition of the case.