*Crescenzi, et al. v. City of New York, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2018

(Argued: February 28, 2019     Decided: October 3, 2019)

No. 18-1002

_____

ARMANDO CRESCENZI, JAMES KENNEDY, ALBERT SIMMONS,
HOWARD DALTON, ORAL FIELDS,

*Plaintiffs-Appellees,*

-v.-

THE CITY OF NEW YORK, VERONICA M. WHITE, CHAIRMAN OF THE NEW YORK CITY
DEPARTMENT OF PARKS AND RECREATION, INDIVIDUALLY AND IN HER OFFICIAL
CAPACITY, BRUCE LANGSTON, ASHA HARRIS, JOHN DOES # 1-10,

*Defendants-Appellants,*

RAYMOND KELLY, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY,

*Defendant.*

_____

Before:     KATZMANN, *Chief Judge*, and LIVINGSTON and DRONEY, *Circuit Judges*.

Defendant-Appellant the City of New York ("the City") appeals from a
judgment of the United States District Court for the Southern District of New York

1

(Daniels, *J.*), granting judgment to Plaintiffs-Appellees on their 42 U.S.C. § 1983 false-arrest claim. On appeal, the City argues that the district court erred in determining that New York General Business Law § 35-a(7)(i) does not require curbside vending. We agree with the City. Accordingly, the judgment of the district court is REVERSED.

CHIEF JUDGE KATZMANN dissents in a separate opinion.

FOR PLAINTIFFS-APPELLEES:      JOSHUA P. FITCH, Cohen & Fitch LLP, New York, NY.

FOR DEFENDANTS-APPELLANTS:      DEVIN SLACK (Richard Dearing, *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Defendant-Appellant the City of New York ("the City") appeals from a March 29, 2018 judgment of the United States District Court for the Southern District of New York (Daniels, *J.*), granting judgment to Plaintiffs-Appellees on their 42 U.S.C. § 1983 false-arrest claim. On appeal, the City argues that the district court erred in determining that New York General Business Law ("GBL") § 35-a(7)(i) does not require curbside vending. We agree and conclude that § 35-a(7)(i) *does* require curbside vending. Accordingly, we reverse the judgment of the district court.

## BACKGROUND

The City is a bustling metropolis in which walking is the primary means of getting around for many of the 8.5 million people who call the City home (not to mention the City's 60 million annual visitors). *See* Winnie Hu, *New York's Sidewalks Are So Packed, Pedestrians Are Taking to the Streets*, N.Y. Times, June 30, 2016, http://nyti.ms/2je0h4J. Much of this pedestrian traffic takes place on sidewalks. Congestion and blockages on these busy sidewalks, then, can create frustrating challenges and real dangers for people simply trying to get to work, school, or the grocery store. The City, cognizant of the sometimes-difficult circumstances of its pedestrians, regulates its sidewalks with a complex patchwork of laws and regulations in order to ensure a steady—and safe—flow of foot traffic. *See, e.g.*, N.Y. City Admin. Code § 19-125(d) (regulating ornamental lamppost placement); *id.* § 19-128.1(b)(5) (newsracks); N.Y. City Zoning Resolution §§ 26-23, 26-42 (planting strips and trees); 34 R.C.N.Y. § 2-20(q)(4) (street poles).

One such regulatory scheme governs disabled veteran vendors, who can be seen on sidewalks across the City selling hot dogs, pretzels, ice cream, and more. The longstanding exemption from municipal limitations on sidewalk vending for disabled veterans, codified in GBL § 35, entitles "any honorably discharged

member of the armed forces of the United States who is physically disabled as a result of injuries received while in the service of said armed forces" to vend in "any street, avenue, alley, lane or park" of the City, so long as he or she has been issued a license to do so. But this entitlement comes with several restrictions, set forth in GBL § 35-a, as to where, when, and how vendors may vend. *Cf. Matter of Rossi v. N.Y.C. Dep't of Parks & Recreation*, 127 A.D.3d 463, 465 (1st Dep't 2015) (noting that the restrictions in § 35-a are designed to "combat sidewalk congestion and promote public safety"). At issue in this case is the restriction described in § 35-a(7)(i), which provides that no disabled veteran vendor

> shall occupy more than eight linear feet of public space parallel to the curb in the operation of a vending business and, in addition, no [disabled veteran vendor] operating any vending business on any sidewalk shall occupy more than three linear feet to be measured from the curb toward the property line.

GBL § 35-a(7)(i).

Armando Crescenzi, James Kennedy, Albert Simmons, Howard Dalton, and Oral Fields (collectively, "Plaintiffs-Appellees") are five disabled veterans who were issued, as relevant here, 298 summonses between 2011 and 2013 while vending in front of the Metropolitan Museum of Art. The summonses were issued by City Parks Enforcement Patrol ("PEP") officers for Plaintiffs-Appellees' failure to comply with orders to relocate their vending carts in violation of the City's rule

4

that no person shall "refuse to comply with the lawful direction or command" of any PEP officer. *See* 56 R.C.N.Y. § 1-03(c)(1). The stated "lawful" basis for the relocation orders was that Plaintiffs-Appellees were contravening § 35-a(7)(i) by operating their carts more than three feet from the curb. Each summons contained nearly identical language. To take one example:

> I did observe the respondent vending food from a cart on parks property that is under the jurisdiction of NYC Parks. The respondent cart was approximately 20 feet from the curb. I told the food vendor that according to GBL 35-a(7)(i) a vendor must occupy no more than three (3) linear feet measured from the curb. When asked to move to the curb the respondent failed to comply with my directives.

A-654.

On February 5, 2013, Plaintiffs-Appellees filed the instant action against the City under 42 U.S.C. § 1983 in the United States District Court for the Southern District of New York.[1] The complaint alleged a claim of false arrest, on the theory that Plaintiffs-Appellees were in compliance with § 35-a(7)(i)—if properly interpreted—at the time of the officers' relocation orders, so that there was no probable cause to issue the summonses.[2] The complaint also alleged a claim of selective enforcement.

---

[1] The complaint named certain individual defendants, but the City is the only remaining defendant.

[2] The parties have assumed throughout this litigation that the officers' issuances

After several years of discovery, the City moved for judgment on the pleadings. In a July 26, 2017 Memorandum Decision and Order on that motion, the district court dismissed the selective-enforcement claim [3] but ruled for Plaintiffs-Appellees on the false arrest claim, as to which the district court deemed the "central question" to be "whether Section 35-a(7)(i) restricts a . . . cart's distance from the curb, or whether it simply restricts the size and dimensions of the cart." A-940. The court ultimately determined that § 35-a(7)(i) restricts only the size and dimensions of vending carts, reasoning primarily that because the provision's first clause restricts only "the *length* of a cart and not its placement," it is therefore "logical that the next clause . . . should be interpreted in the same manner—that is, restricting only a cart's *width* between the curb and the property line and not its distance from the curb." A-941. Based on this interpretation, the court concluded that Plaintiffs-Appellees had "plausibly alleged that the officers who issued [the] summonses lacked probable cause to believe a violation" of § 35-a(7)(i) had occurred. A-944. After dealing with other issues in the litigation, the

_____

of summonses constituted "seizures" that triggered the Fourth Amendment's protections. Given the parties' posture, we assume the same for purposes of resolving this appeal.

[3] Plaintiffs-Appellees have not appealed this ruling.

6

court entered judgment for Plaintiffs-Appellees on March 29, 2018, stating that there was "no probable cause to issue the Disputed Summonses." SPA-5.

The City timely appealed.

## DISCUSSION

The district court's probable cause determination turned on its antecedent resolution of the question whether § 35-a(7)(i) imposes a curbside vending requirement on disabled veteran vendors. Resolution of this municipal law question is sufficient to resolve this appeal. The district court determined that § 35-a(7)(i) merely imposes length and width restrictions on carts, which led it to conclude that there was no probable cause for the summonses. Plaintiffs-Appellees defend that interpretation before this Court. We review *de novo* both the district court's probable cause determination under the Fourth Amendment, *see United States v. Pabon*, 871 F.3d 164, 173 (2d Cir. 2017) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)), and its determination as to the meaning of § 35-a(7)(i). We conclude that § 35-a(7)(i) prohibits vending more than three feet from the sidewalk curb—in other words, that it imposes a curbside vending

requirement. [4] Accordingly, the officers did not lack a basis to issue the summonses, and the district court's conclusion to the contrary is reversed.

Section 35-a(7)(i) has two clauses. The first clause provides that no vendor "shall occupy more than eight linear feet of public space parallel to the curb." The second clause provides that no vendor "shall occupy more than three linear feet to be measured from the curb toward the property line." The language of the second clause is somewhat unusual, and we recognize some ambiguity in the interpretive task it presents us. Nevertheless, we conclude that, on balance, the City's interpretation makes better sense of that clause. According to the City, § 35-a(7)(i) does two things simultaneously: first, it limits the dimensions of vending carts to eight feet in length by three feet in width; second, it requires that carts be positioned lengthwise *alongside the curb*, out of the way of pedestrians. This interpretation gives full effect to every word in the second clause. Carts can occupy

---

[4] The parties dispute whether *Heien v. North Carolina*, 574 U.S. 54 (2014), which held that a seizure conducted on the basis of an officer's "reasonable mistake of law" does not violate the Fourth Amendment, applies to cases like this one involving municipal rather than individual liability. Because we conclude that the City's interpretation of § 35-a(7)(i) is not only reasonable, but correct, we decline to weigh in on whether *Heien* applies. We note, however, that in light of this Fourth Amendment issue, the dissent, which finds § 35-a(7)(i) to be ambiguous, incorrectly labels that question "outcome determinative" in arguing for certification to the New York Court of Appeals. *See* Dissenting Op. at 1.

the three feet nearest the curb, "to be measured from the curb toward the property line."

By contrast, Plaintiffs-Appellees' interpretation ignores the distinct and unusual phrasing of the second clause. In their view, this clause simply requires that carts be no more than three feet in width. But they never explain how that interpretation accords with § 35-a(7)(i)'s language. If all the legislature had wanted to do was limit the dimensions of vending carts, it could have written a straightforward provision reading "no vendor's operation shall occupy more than eight feet in length by three feet in width." Tellingly, however, that's not what the legislature did. Instead, it wrote a provision with the clause that no vendor "shall occupy more than three linear feet to be measured from the curb toward the property line." Plaintiffs-Appellees offer no rationale for why the legislature would use such convoluted language if all it intended to do was limit cart width, and their interpretation renders the phrase "to be measured from the curb toward the property line" meaningless.

Plaintiffs-Appellees' interpretation has still another problem: the background context of § 35-a(7)(i) renders their interpretation implausible, to say the least. That's because under their interpretation of the provision, vendors could

9

place their carts directly in the middle of the sidewalk, so long as the cart was eight feet by three feet in width and placed parallel to the curb. Such an interpretation defies common sense and contravenes the explicit rationale for having a provision like § 35-a. When § 35-a was enacted in 1998, the legislature noted that the law imposed "placement restrictions and other types of controls" on vendors. Budget Rpt., Bill Jacket, L. 1998, ch. 227. Those restrictions were designed to "address both safety and congestion concerns" with "the flow of traffic on New York City's busy sidewalks." *Id.* The law was reenacted in 2004, and the reasons for it were unchanged: to "keep streets safe and make it easier for the millions of people who walk on New York City sidewalks every day to move about in high traffic areas." Governor's Press Release, N.Y. Legis. Serv., Bill Jacket, L. 2004, ch. 11. It is difficult for us to understand how allowing vendors to place large, eight-by-three carts smack in the middle of busy sidewalks would make it *easier* for pedestrians to move about. On the other hand, it is obvious how the City's interpretation of § 35-a(7)(i) furthers this goal. By restricting vendors to the three feet nearest the curbside, § 35-a(7)(i) ensures that the remainder of the sidewalk—including the middle, where pedestrians usually walk—remains free and clear of obstruction. The City's interpretation also ensures that people with mobility-related

10

disabilities, such as those in wheelchairs, can make their way up and down sidewalks without having to navigate around carts placed (incredibly inconveniently) directly in their travel path.

Plaintiffs-Appellees' primary textual argument is that, in their view, § 35-a(7)(i)'s two clauses use "similar expressions," and thus "it must be presumed that the legislature intended the second clause to operate in the same manner" as the first, "namely, to regulate a cart's size and not its placement." Appellee Br. 16. We find this argument unpersuasive, because the two clauses are not similarly phrased—at all. To repeat, the first clause provides that no vendor "shall occupy more than eight feet of public space parallel to the curb," and the second provides that no vendor "shall occupy more than three linear feet to be measured from the curb toward the property line." Had the second clause actually been worded similarly to the first, as Plaintiffs-Appellees insist, it would have said something like "no vendor shall occupy more than three linear feet of public space on the sidewalk *perpendicular to the curb*." Instead, the legislature worded the second phrase completely differently. Indeed, the striking differences in the wording of the two clauses actually prove the opposite of what Plaintiffs-Appellees contend—

11

that a textually sound interpretation of § 35-a(7)(i) must assign a *different* meaning to each clause.[5] The City's interpretation does just that.

The only other argument related to the statutory text that Plaintiffs-Appellees make is that if § 35-a(7)(i) contained a curbside vending requirement, the legislature would have communicated that meaning by using the word "within" rather than "from"—that is, the second clause would have required that vendors "operate within three feet of the curb." Plaintiffs-Appellees assert that other provisions of § 35-a use "within" to describe the minimum required distance between a cart and some other point, such as entrances to buildings, and because the legislature used "from" in § 35-a(7)(i), it must have meant something different there. But the other uses of "within" in § 35-a are used to describe distances that carts *cannot* be located in, while § 35-a(7)(i) describes the area that carts *must* be located in. We have no reason to think the legislature would have used—let alone been *required* to use—the same word to convey these different concepts.

---

[5] The dissent's view that Plaintiffs-Appellees' interpretation "gives full effect" to the disputed clause by "modif[ying] the word 'feet' to prevent vendors from placing eight-foot-by-three-foot carts perpendicular to the curb" glosses over this distinction. *See* Dissenting Op. at 1. The legislature could have readily achieved that reading using the consistent language "no vendor shall occupy more than three linear feet of public space on the sidewalk perpendicular to the curb"; instead, it chose to use wholly dissimilar language.

Moreover, and more importantly, we ultimately do not ascribe much importance to the use of "from" instead of "within." Both words can be used to convey distances, and the use of "within" in one part of the statute does not foreclose the legislature's use of "from" in another.

Having failed to put forth a convincing reading of the text of § 35-a(7)(i), Plaintiffs-Appellees next attempt to support their interpretation by resort to surrounding provisions that, they say, duplicate or contradict any curbside vending requirement in § 35-a(7)(i). For instance, they point to § 35-a(7)(h)'s regulation of vendor proximity to "entranceway[s] to any commercial building or store." Subsection (h) provides that "where such doorways are within forty feet from each other . . . , a vending pushcart, stand or goods shall be an equal distance from the center of the doorway of each such commercial business or store at the furthest possible distance on the sidewalk from the building line."[6] According to Plaintiffs-Appellees, the phrase "furthest possible distance on the sidewalk from the building line" in subsection (h) creates a limited curbside vending requirement, which would be at least partially superfluous if subsection (i) creates

---

[6] We note that the legislature used the word "from" in this provision to convey distances, just as it did in § 35-a(7)(i), lending further support to our conclusion above that the word "from" in § 35-a(7)(i) does not somehow preclude a curbside vending requirement.

13

a *universal* curbside vending requirement. We first note that the "canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute," *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 106–07 (2011) (internal quotation marks omitted), and because Plaintiffs-Appellees have yet to offer an interpretation that makes use of all of the words in § 35-a(7)(i) itself, their attempt to invoke the canon here largely falls flat. But even taking the argument on its merits, subsection (h) requires a vending cart near doorways less than 40 feet apart to be placed *both* (1) at the curbside and (2) "an equal distance from the center of [each] doorway." The point of subsection (h), then, is to ensure that a clear path is available to each doorway. We hardly think that the universal curbside requirement in subsection (i) undermines or renders superfluous the legislature's decision in subsection (h) to, in the course of providing clarity about what vendors need do around doors, reiterate that carts must *also* be located near the curb.

The other ancillary provisions cited by Plaintiffs-Appellees and found persuasive by the dissent, *see* Dissenting Op. at 3–4, are even less helpful to their interpretation and drift even further from the key interpretive point, which is that Plaintiffs-Appellees have not offered a plausible interpretation of the provision at

14

issue *in this case*, § 35-a(7)(i). In such circumstances, Plaintiffs-Appellees cannot solve their interpretive problems by pointing to surrounding provisions that may, in limited circumstances, overlap with § 35-a(7)(i)'s universal curbside requirement. *See, e.g.*, *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019) ("Sometimes the better overall reading of the statute contains some redundancy.").

The final piece of support for their interpretation that Plaintiffs-Appellees offer is a collection of 125 decisions by administrative law judges ("ALJs") on the City's Environmental Control Board rejecting the interpretation of § 35-a(7)(i) that the City presents here. We find these decisions of limited persuasiveness for two reasons. First, these 125 decisions—all of them written by the same five ALJs— contain identical, formulaic language that merely states, in relevant part: "the rule in question, which requires that vending units not occupy more than 8 feet measured parallel to the curb and 3 feet when measured, in effect, perpendicularly from the curb, . . . pertains only to a unit's length and width, not to its distance from the curb." *E.g.*, A-693. Our analysis above of the text of § 35-a(7)(i) refutes the quoted statement. Second, while they do not speak *directly* to the issue here, several decisions of the Appeals Board (above the ALJs in the administrative hierarchy) appear to contradict the interpretation of § 35-a(7)(i) set forth in the ALJ

15

decisions. *See, e.g.*, *NYC v. Howard Dalton*, ECB Appeal No. 1200146 (July 26, 2012) (stating that because § 35-a(7)(i)'s restrictions apply in a museum plaza, an officer's directions to a vendor whose cart was located "about 15, 20, 25, or 30 feet from the curb" to move to within three feet of the curb "were lawful").

In sum, we read the two clauses of § 35-a(7)(i) just as the City does: to both limit the dimensions of vending carts and to impose a curbside vending requirement. To do otherwise, and allow carts to be placed in the middle of the sidewalk, would be to defy common sense as well as both the text and context of the statutory provision before us.

## CONCLUSION

For these reasons, we REVERSE the district court's judgment and REMAND to the district court with instructions to enter judgment for the City.

16

KATZMANN, *Chief Judge*, dissenting:

As the majority's thoughtful opinion outlines, there are good reasons to view New York General Business Law ("GBL") § 35-a(7)(i) as imposing a curbside vending requirement on disabled veteran vendors. However, I believe that Plaintiffs-Appellees also present strong arguments that subsection (i) restricts the width of a vendor's cart, measured perpendicular to the curb, but does not independently dictate where the cart must be placed on the sidewalk. Because I find the statutory provision at issue to be ambiguous, and involving an unsettled question of state law, I would certify the question of its proper interpretation to the New York Court of Appeals, whose decision, on my reading, would be outcome determinative as to the matter at hand.

Contrary to the majority's characterization, Plaintiff-Appellees' interpretation gives full effect to the clause "to be measured from the curb toward the property line": it modifies the word "feet" to prevent vendors from placing eight-foot-by-three-foot carts perpendicular to the curb. In other words, under their interpretation, the provision governs the carts' dimensions and orientation, requiring that vendors use up only three feet of space along the narrow dimension of the sidewalk—the dimension from the curb to the property

1

line—while permitting vendors to use up to eight feet of space along the wider dimension of the sidewalk—the dimension running parallel to the curb.

To be sure, if Plaintiffs-Appellees are right, the legislature could have expressed this concept more clearly. But the same critique applies to the majority's interpretation of the clause as a curbside vending requirement. The legislature could have written a straightforward provision stating explicitly that vending must occur within three feet of the curb or that vendors are prohibited from vending farther than three feet from the curb. The simple fact is that subsection (i) is unclear, and, while both parties' interpretations could explain the words used, neither renders the phrasing natural.

That said, the legislature does use clear language to restrict cart placement in other subsections of the statute. Subsection (h) provides that "no vending pushcart . . . shall be located . . . within twenty feet from an entranceway to any commercial building or store" or "within sixty-five feet of the entranceway to any theater, movie house, indoor sports arena, or place of worship or school," and subsection (l)(i) provides that no vendor shall "vend . . . within ten feet of

2

any driveway."[1] Indeed, subsection (h) contains a perfectly clear curbside vending requirement: where there are multiple commercial doorways within forty feet of each other, carts must "be an equal distance from the center of the doorway of each such commercial business or store at the furthest possible distance on the sidewalk from the building line."

These unambiguous provisions lend credence to Plaintiffs-Appellees' argument that the legislature "knew how to draft a [curbside vending requirement] when it wanted to." *City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 338 (1994); *see Russello v. United States*, 464 U.S. 16, 23 (1983) (if the legislature intended to restrict a certain subsection in a particular way, "it presumably would have done so expressly as it did in the immediately following subsection").

Moreover, interpreting subsection (i) to impose a curbside vending requirement would render superfluous other provisions governing cart placement. The statute prohibits locating vending carts over cellar doors, in front of the glass windows of businesses, and against the sides of buildings, all

---

[1] I do not find it to be a meaningful distinction that these subsections are discussing areas that a cart *cannot* be "within," while the provision in question, under the majority's interpretation, discusses areas that a cart *must* be "within."

locations next to the property line, not the curb. *See* GBL § 35-a(7)(l), (g), (h). And, as discussed above, the statute specifically requires curbside vending on blocks with lots of entrances along the property line. *See* GBL § 35-a(7)(h). These specific provisions would be unnecessary if section 35-a(7)(i) imposed a general curbside vending requirement.

The majority could be correct that these provisions merely indicate a belt-and-suspenders approach. But "one of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). Given the number of prohibitions that the majority's interpretation would render superfluous, Plaintiffs-Appellees at least have a strong argument that these other provisions are in fact necessary because subsection (i) does not require a disabled veteran vendor to vend at the curb at all times.

While I agree fully with the majority that the statute is intended to reduce sidewalk congestion, I disagree that this general purpose indicates that this particular provision requires curbside vending. Plaintiffs-Appellees' reading of subsection (i) would also reduce sidewalk congestion, by ensuring that vending

4

carts take up only three feet of space across the sidewalk and leave the rest for pedestrians. Other parts of the statute prevent a cart from being stationed in the center of a sidewalk, absent unusual circumstances. For instance, many avenues and side streets, including all sidewalks narrower than ten feet as measured from the property line to the curb, are entirely off limits to disabled veteran vendors. *See* GBL § 35-a(7)(a), (f). The statute further requires a clear, ten-foot wide pedestrian path from the property line to any obstruction. *See* GBL § 35-a(3).

Finally, I find the decisions of the ECB Appeals Board, which simply assumed that the City's interpretation of subsection (i) was correct while resolving other disputed questions, to be of little persuasive value. More relevant, in my view, are the 125 ECB administrative law judge decisions directly addressing this question and finding against the City. Notably, the City appealed none of these decisions–-although officers continued to issue new summonses based on the interpretation of subsection (i) rejected by the ECB, summonses, which, strangely, also appear to have been issued in vastly disproportionate numbers to the disabled veteran vendors in the Met plaza.[2]

---

[2] During the nineteen months in question, the 904 summonses issued to disabled veteran vendors at the Met represented 80% of the total number of that type of summonses issued citywide.

5

In sum, it appears to me that there are two plausible interpretations of this unusually-worded provision of state law, a provision that has been previously interpreted only by state administrative agencies. Accordingly, consistent with our preference that states define the meaning of their own laws in the first instance, I would certify the question of this provision's meaning to the New York Court of Appeals. *See, e.g.*, *Haar v. Nationwide Mut. Fire Ins. Co.*, 918 F.3d 231, 235 (2d Cir. 2019); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 821 F.3d 265, 270-71 (2d Cir. 2016); *Ministers & Missionaries Benefit Bd. v. Snow*, 780 F.3d 150, 153-54 (2d Cir. 2015).

For the reasons stated above, I respectfully dissent.